# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

CHAMBERS OF
PAUL W. GRIMM
CHIEF UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
(410) 962-3630 FAX

December 22, 2009

Iris Whiting, Esq.
P.O. Box 1457
12A Talbot Lane
Easton, MD  21601

Allen F. Loucks, AUSA
36 S. Charles Street
4th Floor
Baltimore, MD  21201

**Re: Kenneth Russ v. Michael J. Astrue, Commissioner of Social Security, PWG-08-2451**

Dear Counsel:

Pending before this Court, by the parties' consent, are Cross-Motions for Summary Judgment concerning the Commissioner's decision denying Kenneth Russ' claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits("SSI"). (Paper Nos. 7,10,13).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). A hearing is unnecessary.  Local Rule 105.6.  For the reasons that follow, this Court **GRANTS** the Commissioner's Motion and **DENIES** the Plaintiff's Motion.

Kenneth Russ ("Claimant"), applied for SSI and DIB on July 1, 2003, alleging that he was disabled since October 12, 1997, due to closed head injuries he sustained in a motorcycle accident, a mood disorder, an anxiety disorder, cataract surgery, depression, and a substance abuse disorder in remission. (Tr. 12, 69, 87, 176). His claims were denied initially, and upon reconsideration. (Tr. 43-50).  A hearing was held before an Administrative Law Judge ("ALJ"), the Honorable Melvin D. Benitz on September 25, 2007, where Mr. Russ appeared and testified. (Tr. 454-481).  The ALJ subsequently denied Mr. Russ' claims in a decision dated November 6, 2007. (Tr. 10-24). The ALJ found that although Claimant's mood disorder with depressive features secondary to a closed head injury, anxiety disorder, personality change and polysubstance

abuse, were all "severe" impairments as defined in the Regulations, they did not meet or medically equal any of the listed impairments ("the Listings") found in the Regulations. (Tr. 12). The ALJ also determined that Claimant retained the residual functional capacity ("RFC") to perform a range of light work[1]. (Tr. 13). The ALJ found that Claimant was not able to perform any of his past relevant work ("PRW"). However considering his age, education, work experience, RFC and after receiving testimony from a vocational expert("VE"), the ALJ determined there were jobs in the local and national economy that Mr. Russ could perform. Accordingly, the ALJ found that he was not disabled. (Tr. 24). On July 18, 2008, the Appeals Council denied Claimant's request for review, making his case ready for judicial review. (Tr. 3-5).

Claimant presents two arguments that the Commissioner's final decision is not supported by substantial evidence. Claimant argues: 1) he meets Listings 12.02, 12.03 and 12.04; and 2) the ALJ improperly rejected the opinions of his treating psychiatrist and therefore erred in determining his RFC. *See* Plaintiff's Memorandum, pp. 7-23. For the reasons that follow, I disagree.

Claimant's primary argument is that the ALJ erred at step three of the sequential evaluation in failing to find that Claimant's medical conditions met, or medically equalled, the listed impairments found in Listings 12.02, 12.03, and 12.04[2]. *See* Plaintiff's Memo., pp. 9-27.

The Claimant argues that he meets Listings 12.02, 12.03 and 12.04 "according to his medical records and his testimony" and that contrary to the ALJ's finding, the evidence shows he suffered from repeated episodes of decompensation. The Commissioner argues that the record does not demonstrate the requirements to satisfy a finding of any "marked" limitations and that the ALJ's decision that Claimant did not meet any Listings is supported by substantial evidence and should be affirmed. *See* Defendant's

---

[1] The ALJ found that Claimant had the RFC to perform "light work except that he could sit 6 hours and stand 5 hours; would need a simple, routine, unskilled job with low stress, concentration, memory and focus requirements, but could attend to tasks and schedules; would need to avoid much interaction with supervisors and co-workers due to his mental problem and would have to avoid people mostly due to his attitude." (Tr. 15).

[2] These categories are defined as Organic Mental Disorders, Other Psychotic Disorders, and Affective Disorders, respectively.

2

Memorandum, pp. 10-21.  After careful review of the record, I agree with the Commissioner.

With respect to Claimant's argument that he meets the "B" and "C" criteria of Listings 12.02, 12.03 and 12.04, a careful review of the entire record supports the ALJ's finding.  The Listings, in relevant part, provide as follows:

> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements of C are satisfied...
>
> **B. Resulting in at least 2 of the following:**
> **1. Marked restriction in activities of daily living; or**
> **2. Marked difficulties in maintaining social functioning; or**
> **3. Marked difficulties in maintaining concentration persistence or pace; or**
> **4. Repeated episodes of decompensation, each of extended duration; OR**
>
> C. Medically documented history of a chronic mental disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support **and one of the following:**
> 1. Repeated episodes of decompensation, each of extended duration;  or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.
>
> *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1.(As of April 1, 2007)(emphasis added).

In his decision the ALJ stated that he considered both the "B" and "C" criteria of the Listings and I find that he adequately explained his findings with respect to both sections[3]. (Tr. 14-15).

---

[3] The ALJ found that Mr Russ had the following limitations: "mild" limitation in activities of daily living;

3

Claimant relies on summaries of his doctors' notes and the verbatim language of the regulation to support his argument. However, as noted by the ALJ, this evidence does not equate "marked" limitations as they are defined in the "Introduction to Mental Impairments". Furthermore the evidence cited does not support a finding that Mr. Russ had "repeated" episodes of decompensation.

For example, the Regulations define "marked" limitation in the area of concentration as: "we do not define 'marked' by a specific number of tasks that you are unable to complete, but by the nature and overall degree of interference with function." The ALJ found that Mr. Russ only had a "moderate" limitation in concentration and in doing so cited Mr. Russ' own statement to Dr. Hutchinson that his memory and concentration had returned, and that he had "no problems in this area". (Tr. 14, 187). The Regulations define "episodes of decompensation" as exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration persistence or pace. **"Repeated" means "three episodes within 1 year, or an average of once every four months, each lasting for at least 2 weeks".** *See* Introduction to Mental Disorders 12.00(emphasis added). The evidence in Mr. Russ' records simply does not meet these definitions and the ALJ's findings are supported by substantial evidence.

Mr. Russ also argues that the ALJ improperly rejected the opinions of his treating psychiatrist, Dr. George Rever. On three different occasions Dr. Rever completed Medical Reports in which he stated, among other things, that he had been treating Claimant since April 2004, and that his condition had improved, and that his prognosis was "good". (Tr. 20, 184). In February 2006, the doctor again stated Mr. Russ' condition had improved and, that his prognosis was "fair". However in June 2005 there were findings in a report that, if accepted as fully credible, would render Mr. Russ disabled. However the ALJ found that this report was inconsistent with the doctors office notes and his previous reports. (Tr. 440-444). The ALJ stated that he considered Dr. Rever's assessment, but did not give it "great weight" for several reasons. The ALL noted that the assessment in May 2005 stated that Mr. Russ could work.(Tr. 446-453). Whereas in February 2006 the doctor stated Claimant could not work. The ALJ concluded that

---

"Moderate" limitation in social functioning; "moderate" limitation in concentration, persistence, or pace; and experienced "no" episodes of decompensation. (Tr. 15-17).

the doctor's most recent report was not supported by the office records, and that overall the nature of his treatment indicated that Mr. Russ improved with therapy and medication, and ultimately found it was not supported by the objective medical evidence. (Tr. 21, 446-452).

A treating physician's opinion is given controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and 2) it is consistent with other substantial evidence in the record. *See Craig* v. *Chater*, 76 F.3d 585 (4th Cir. 1996); *see also* 20 CFR §404.1527(d)(2). While treating source opinions on issues reserved to the Commissioner--such as determining a claimant's RFC--are not entitled to controlling weight, the ALJ still must evaluate all of the evidence in the case record to determine the extent to which the opinion is supported by the record. In this case, I find that the ALJ fulfilled this duty. Contrary to Claimant's argument, the ALJ adequately discussed Dr. Rever's opinions in his decision. The ALJ specifically addressed Dr. Rever's opinions and in rejecting them, noted the evidence which contradicted his findings. For example, the ALJ noted Claimant's report to Dr. Hutchinson that he had no problems with concentration and memory. (Tr. 18-20, 184, 187). This evidence was properly considered by the ALJ and I find the ALJ's findings are explained adequately and are supported by substantial evidence.

Thus, for the reasons given, this Court GRANTS the Commissioner's Motion for Summary Judgment and DENIES Claimant's Motion. A separate Order shall issue.

Sincerely,

/s/
Paul W. Grimm
United States Magistrate Judge